UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DELMAR SYSTEMS, INC. | * | CIVIL ACTION NO. |
| | * | |
| VERSUS | * | JUDGE: |
| | * | |
| BARDEX CORPORATION | * | MAGISTRATE JUDGE: |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Delmar Systems, Inc., a corporation organized under the laws of the State of Louisiana, who files this Complaint against Bardex Corporation, a corporation organized under the laws of the State of California, also doing business within the jurisdiction of this Court in Houston, Texas, alleging as follows:

1.

Delmar Systems, Inc. ("Delmar") is a corporation organized under the laws of the State of Louisiana with its principal place of business and domicile being located at 8114 Highway 90 East, Broussard, Louisiana 70518.

2.

Defendant, Bardex Corporation ("Bardex"), is a corporation organized under the laws of the State of California and does business within the State of Texas at 1160 Dairy Ashford Road, Houston, Texas 77079.

3.

There exists complete diversity between the parties, and the amount in controversy herein exceeds the minimum jurisdictional limit of $75,000.00.

4.

In addition, this matter arises under Federal law, namely the United States patent statute, as amended, 35 U.S.C. Sec. 1, et seq.

## Facts

5.

On September 12, 2018, Delmar and Bardex entered into a written agreement entitled, "Memorandum of Understanding" (hereinafter "MOU") (Exhibit 1) wherein the parties agreed to jointly enter into a proposal to third parties to provide an in line tensioning mooring system, including installation, labor, and support, to customers offshore.

6.

The MOU was to protect intellectual property exchanged between Delmar and Bardex which was proprietary to each company. The MOU provided, specifically, that "[N]either the execution and delivery of this MOU, nor the furnishing of any proprietary information by either party shall be construed as granting to the other party either expressly, by implication, estoppel, or otherwise, any license under any invention of patent, hereafter owned or controlled by the party furnishing same."

7.

The MOU further provided that, "[A]ll inventions and associated intellectual property (IP) shall remain the property of the originating party."

8.

Delmar and Bardex further entered into a written document entitled, "Proprietary Information Non-Disclosure Agreement" (Exhibit 2) entered and made effective on April 13, 2015, again for the express purpose of protecting their individual intellectual property, proprietary information, and patents.

9.

Delmar and Bardex proceeded to develop the contemplated mooring line tensioning methodology. Delmar provided engineering drawings and analyses that became an integral part of the methodology of the mooring line tensioning. Once the mooring line tensioning methodology was developed, Bardex, contrary to all agreements executed between the parties, and in violation of applicable patent law, filed a United States provisional patent application, SN 62/765155 (the '155 Application; and a United States non-provisional patent application, SN 16/172285 (the '285 Application), which later issued as United States Patent No. 10,676,160 (the '160 Patent). Nick Attalah and Dennis Graney (Bardex employees) are the only named inventors in the '285 Application and the '160 Patent, improperly omitting Dillon Shuler (Delmar employee) as a named inventor, despite the fact that the '160 Patent discloses and claims subject matter conceived by Dillon Shuler. The '155 Application, the '285 Application, and the '160 Patent incorporate written descriptions of apparatus and/or methods, and drawings depicting same, and other intellectual property of Delmar. Bardex's actions in connection with the filing of the '155 Application, the '285 Application, and obtaining the '160 Patent were and are in violation of the provisions of Title 35 United States Code, laws related to patents.

10.

Bardex has proceeded to market the mooring line tensioning methodology jointly developed by Delmar and Bardex as its own and has converted Delmar's intellectual property in the process.

11.

Bardex now claims that the mooring line tensioning methodology developed jointly by Delmar and Bardex is its sole property, disregarding all prior written agreements (as hereinabove outlined) and joint work performed by the companies in developing the system. This is directly

contrary to the intent of the joint development of the in line mooring tensioning system and Bardex's attached July 2, 2018 email to Delmar's Dillon Shuler (Exhibit 3).

12.

Delmar's Dillon Shuler provided drawings to Bardex (Nick Atallah) which were duplicated and incorporated in Bardex's '155 Application, '285 Application, and in the '160 Patent. As such, it is clear that Nick Attalah and Dennis Graney were not the sole inventors of the in line mooring tensioning apparatus, procedure and technology, as Bardex now claims. Bardex has used Delmar's intellectual property, including, but not limited to- drawings and information conveyed in written form and/or communicated verbally to Bardex personnel, to its (Bardex's) sole financial benefit, depriving Delmar of payments and profits from the use of the in line mooring tensioning methodology that Delmar's employee, namely Dillon Shuler, solely or coinvented, at minimum.

13.

Dillon Shuler is properly a sole or coinventor on the '160 Patent.  By Assignment (Exhibit 4), Dillon Shuler has conveyed all of his rights, title, and interest in the '160 Patent (and the underlying applications), to Delmar.  Delmar is therefore rightfully a co- owner, at minimum, of the '160 Patent, and entitled to such payments and profits, and entitled to bring this action for correction of inventorship.

14.

Delmar asserts herein that Bardex has marketed for and carried out mooring projects in which the mooring apparatus and methods disclosed and/or claimed in the '160 Patent were employed, said mooring apparatus and/or methods thereby being offered for sale/sold/manufactured and/or used by Bardex. Some or all of the revenues received by Bardex in connection with such projects, and profits therefrom, resulted directly from the use of the apparatus and methods disclosed and claimed in the

'160 Patent, and properly owned solely or in part by Delmar. Accordingly, some or all of such profits properly belong to Delmar.

## Count One:
## Patent Law

15.

This civil action arises under and is brought, in part, under federal law, namely the U.S. Patent Statute, as amended, 35 U.S.C. § 1, et seq., seeking recourse for Bardex's violation of said statute and misappropriation of Delmar's intellectual property. More specifically, 35 U.S.C. § 256 provides for correction of inventorship when an inventor has been omitted. Delmar asserts that Bardex omitted Dillon Shuler as an inventor in the '155 Application, the '285 Application, and the resulting '160 Patent. Delmar is the assignee of Dillon Shuler's rights to the underlying applications and '160 Patent, and accordingly, Delmar seeks correction of inventorship in those applications and the '160 Patent, and issuance of an order to the Director of the United States Patent and Trademark Office to issue a patent certificate accordingly. Delmar is additionally entitled to relief for Bardex's actions, whether arising under 35 U.S.C. or other applicable federal and state laws.

## Count Two:
## Tortious Misconduct

16.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

17.

Upon information and belief, Delmar herein alleges that Bardex intentionally, maliciously, and purposely converted, manipulated, and marketed Delmar's confidential and proprietary information, technology, systems, and materials in an ongoing effort to perpetuate and conceal a

course of conduct whereby Defendants have and continue to divert the assets of Delmar for the benefit of itself.

18.

Bardex intended and knew or reasonably should have known that its conduct, in knowingly and purposefully converting and misusing Delmar's confidential and proprietary property, would cause immediate and future damages, losses, and injuries to Delmar.

19.

Bardex purposefully engaged in conduct it intended and knew or reasonably should have known would damage, impair, and interfere with Delmar's ability to conduct its present and future business with present and future customers by converting its confidential and proprietary property to the benefit and use of themselves and/or other persons and entities, among other things.

20.

Bardex acted with improper motives and without proper cause or reasonable justification in interfering with Delmar's business dealings and relationships with its established and potential customers.

21.

As a direct and proximate result of the unjustified, malicious, and intentional interference by Bardex in the dealings between Delmar and its customers, Delmar has suffered damage to its business and property, including, but not limited to, lost revenue and profits from current, successive, and future customers, lost or wasted investments and expenditures made in its confidential and proprietary business, and such other losses, damages, and injuries as shall be shown at trial.

22.

Bardex purposely orchestrated and implemented a plan to destroy, modify, access, disclose, and take Delmar's intellectual property in the form of trade secrets and proprietary and confidential information, images, documents, and other information with the intent to capitalize upon it and market it as being owned by Bardex. This action was intentionally designed to significantly diminish Delmar's ability to utilize and market its own information and technology. Delmar alleges herein that Bardex, to this date, has retained access to and possession of the Delmar's confidential and proprietary property unlawfully.

23.

Bardex purposely orchestrated and implemented a plan to utilize Delmar's tensioning methodology as its own, despite having contractually agreed not to retain, use, or appropriate any confidential or proprietary information that it received from Delmar during the course of the relationship between Bardex and Delmar. Bardex's actions have been intentional and tortious.

### Count Three:
### Fraud and/or Misrepresentation

24.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

25.

Upon information and belief, Bardex fraudulently induced Delmar to grant Bardex access to Delmar's confidential and proprietary information, products, and technology for the purpose of allowing Bardex to unlawfully misappropriate, use, and market Delmar's confidential technology and information as its own. Delmar would not have entered into any arrangement with Bardex had it known of the scheme.

26.

Bardex, intentionally and without authorization, orchestrated and implemented a plan to misappropriate Delmar's confidential and proprietary technology and trade secrets for the purpose of gaining an unlawful competitive advantage over Delmar and causing Delmar actual damages and injuries.

27.

Delmar further believes and reasonably avers that Bardex purposefully and/or negligently suppressed and concealed the true purpose, intent, and circumstances whereby it induced Delmar to deal with it in order to perpetrate and conceal its conversion, interstate communications, and related misconduct.

28.

Delmar relied to its detriment upon the misrepresentations and omissions of Bardex in entering into and maintaining their relationship. Bardex's misrepresentations through omission, silence, statements, actions, and oppression can reasonably be inferred from the facts and circumstances set forth herein.

29.

Delmar has been damaged by the misrepresentations of Bardex and/or those acting at its behest or under its influence or control as a result of, inter alia, the loss of future profits; the loss of business opportunities; injury to Delmar's business, brand, good will, and reputation; out-of- pocket costs and expenses incurred by Delmar in an attempt to preserve and protect its confidential and proprietary systems and information in order to continue to operate its business; and all such other damages, losses, and injuries of such nature and in such amounts as shall be proven at trial.

## Count Four:
## Breach of Confidentiality Agreement

30.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

31.

Bardex has breached the Proprietary Information Non-Disclosure Agreement it entered into with Delmar on April 13, 2015 and MOU dated September 12, 2018 through its acts of misappropriation and conversion of Delmar's proprietary and confidential information as well as its direct use of photographs taken from Delmar's documents and marketing materials and inclusion of those same photographs in Bardex's marketing materials.

32.

Additionally, the Proprietary Information Non-Disclosure Agreement obligated Bardex to return all proprietary information and systems to Delmar upon the termination of their relationship. In addition to the proprietary materials that Bardex has retained and marketed as its own, Bardex has not returned the in line tensioning methodology documentation, resulting in an unauthorized disclosure of Delmar's methodology.

## Count Five:
## Unfair Trade Practices

33.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

34.

The actions by and on behalf of Bardex, as set forth herein, violate the Louisiana Unfair Trade Practices Act (LUTPA) under La. R.S. § 51:1401, et seq. and also constitute unfair competition by misappropriation under Texas law.

35.

Bardex's misappropriation and unauthorized use of Delmar's proprietary information and technology constitutes deceptive and calculated acts to gain a market and business advantage and harm Delmar's ability to participate in an honest and fair market.

36.

Bardex manipulated Delmar to mislead Delmar into believing that its confidential and proprietary property and technology, was sufficiently protected, and then Bardex implemented unfair, deceptive and fraudulent acts to gain access to and misappropriate Delmar's information and technology to gain an unjust and improper advantage over Delmar.

## Count Six:
## <u>Uniform Trade Secrets</u>

37.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

38.

The actions by and on behalf of Bardex, as set forth herein, violate the Uniform Trade Secrets Act. Trade Secrets protection exists under the Louisiana Uniform Trade Secrets Act (LUTSA) under La. R.S. § 51:1431, et seq., and/or the Texas Uniform Trade Secrets Act, Civil Practice and Remedies Code § 134A.001, et sec.

39.

Trade secrets are defined to include a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Therefore, Delmar's confidential and proprietary property is entitled to protection as trade secrets.

40.

Bardex misappropriated Delmar's trade secrets by using improper means to acquire knowledge of the trade secrets, knowing the trade secrets were protected through reasonable means including the Memorandum of Understanding and the Proprietary Information Non-Disclosure Agreement.

41.

Bardex has caused actual harm to Delmar by marketing Delmar's confidential and proprietary systems and technology as its own, thereby utilizing Delmar's trade secrets for the purpose of forcing Delmar out of the marketplace and furthering Bardex's own, unfairly acquired business advantages.

**Count Seven:
Conversion of Delmar's Property**

42.

Delmar hereby repeats, reavers, and reasserts the facts and allegations set forth in the preceding Paragraphs as though those facts were set forth herein in their entirety.

43.

Furthermore, despite demand, Bardex has not returned documentation relating to the in line tensioning methodology. As this methodology is property of Delmar, its continuing possession by Bardex, if intentional, constitutes conversion.

### Damages and Remedies

44.

In addition to all remedies under the United States Patent and Trademark laws, Delmar is additionally entitled to an order that all proprietary information and technology be returned to Delmar, that Delmar be awarded all damages caused by Bardex's actions, that Bardex be ordered to disgorge all profits realized from the utilization of Delmar's property and technology, that Bardex be ordered to pay all attorney fees incurred by Delmar as appropriate, and that Delmar be awarded all other relief provided under Federal and state law under the facts as alleged.

### Jury Trial Request

45.

Delmar prays for a jury trial on all issues inherent herein.

### Prayer for Relief

WHEREFORE, premises considered, Delmar Systems, Inc. prays that after Bardex Corporation is duly served with a copy of this Complaint, and after all legal proceedings, there be judgment in favor of Delmar Systems, Inc., and against Bardex Corporation, for the following relief:

1. Correction of inventorship in the underlying applications and the '160 Patent and issuance of an order to the Director of the United States Patent and Trademark Office to issue a patent certificate for the '160 Patent, showing proper inventorship and co-ownership, and all other relief arising under 35 U.S.C. or other applicable federal and state laws;

2.  Damages reasonable under the premises, which at present exceed five million ($5,000,000.00) dollars, as a result of:

    a.  Bardex's tortious misconduct;

    b.  Bardex's fraud and/or misrepresentation;

    c.  Bardex's breach of the confidentiality agreement;

    d.  Bardex's unfair trade practices;

    e.  Bardex's misappropriation of trade secrets and proprietary information; and

    f.  Bardex's conversion of Delmar's property;

3.  Damages consisting of disgorgement of all profits realized from utilization of Delmar's property and technology;

4.  All attorney fees incurred by Delmar in the prosecution of this matter; and

5.  Delmar also prays for the issuance of all orders necessary to return and restore the confidentiality of Delmar's confidential information, property and technology; all costs of court; and all general and equitable relief under all applicable federal and state laws.

                    Respectfully Submitted:

                    BREAUD & MEYERS

                    *s/Alan K. Breaud*

                    _____
                    ALAN K. BREAUD, Bar Roll No. 3420
                    420 Oil Center Drive (70503)
                    Post Office Box 51365
                    Lafayette, Louisiana 70505-1365
                    Telephone:   (337) 266-2200
                    Facsimile:    (337) 266-2204
                    alan@breaudlaw.com

          LAW OFFICE OF JESSE D. LAMBERT, LLC
          JESSE D. LAMBERT, Bar Roll No. 22101
          1018 Harding Street
          Suite 111
          Lafayette, Louisiana  70503
          Telephone:     (337) 232-5006
          jesse@lambert.net

          Attorneys for Delmar Systems, Inc.